STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, PLAIN-
TIFF–RESPONDENT, v. THYDYLLO MYNDYLLO AND BET-
SEY MYNDYLLO, HIS WIFE, AND THE CITY OF TRENTON,
DEFENDANTS–RESPONDENTS, LOUISE INNISS, DEFEND-
ANT–APPELLANT, AND LILY K. YIN, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted May 3, 1988—Decided May 25, 1988.

Before Judges PRESSLER, MUIR, Jr. and SKILLMAN.

*Abbotts & Abbotts,* attorneys for appellant (*John Abbotts,* on the brief).

*W. Cary Edwards,* Attorney General, attorney for respondent, State of New Jersey, Department of Treasury (*Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Alan B. Rothstein,* Deputy Attorney General, on the brief).

*George T. Dougherty,* City Attorney, attorney for respondent City of Trenton.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiff State of New Jersey determined to acquire a small parcel of property in the City of Trenton owned by defendants Thydyllo and Betsy Myndyllo. This property was subject to tax liens held by defendant City of Trenton of approximately

$4,000, a $5,500 mortgage held by defendant Lily K. Yin, and a judgment of $11,910 which had been executed on the property by defendant Louise Inniss.

The State entered into a contract with the Myndyllos to purchase the property for $5,000. It then filed this action for specific performance against both the Myndyllos and the lienholders. The complaint sought to compel conveyance of title by the Myndyllos and also an order that "the conveyance be free and clear of all liens, and· the sum of $5,000 attach to the various liens of the other defendants."

The trial court granted the State's motion for summary judgment and entered an order directing the Myndyllos to convey title and providing that the conveyance would be free and clear of all liens. In a subsequent order, the court directed that $4,339.05 of proceeds of the sale be disbursed to the City of Trenton.[1] Defendant Inniss appeals.

We conclude that the State lacks statutory authority to extinguish liens on real property acquired by voluntary conveyance, unless the lienholders either receive payment or release their liens. Therefore, we reverse.

The Eminent Domain Act of 1971, *N.J.S.A.* 20:3-1 *et seq.*, authorizes the State to acquire property by condemnation whenever it "... cannot acquire title thereto ... by agreement with a prospective condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other good cause." *N.J.S.A.* 20:3-6. When the State condemns property, it takes "title in fee simple, free and discharged of all right, title, interest and liens of all condemnees." *N.J.S.A.* 20:3-20.

■· The State characterizes its contract to purchase the Myndyllos' property as a "voluntary agreement in lieu of condemnation proceedings," and it contends that the judgment

---

[1] It is unclear from the record whether the disbursement to the City exhausted the net proceeds from the sale of the property.

requiring specific performance of that contract extinguished all liens in the same manner as would a judgment in condemnation. We find no authority for this view in the Eminent Domain Act. The Act expresses a strong preference for voluntary acquisition of property which is required for public purposes. *See Morris County v. Weiner*, 222 *N.J.Super.* 560 (App.Div.1988); *Rockaway v. Donofrio*, 186 *N.J.Super.* 344 (App.Div.1982). However, it contains no special provisions for the discharge of liens on property which governmental agencies acquire by voluntary conveyance rather than by condemnation. Thus, *N.J.S.A.* 20:3–20 provides for the discharge of liens only with respect to "title to property condemned and acquired by the condemnor hereunder." Therefore, where the State acquires title to property by voluntary conveyance, any liens must be discharged by the payment of the lienholders from the proceeds of the sale or by agreement with the lienholders. Where any liens on property required for public purposes cannot be discharged in this manner, a governmental agency must bring condemnation proceedings in order to obtain clear title.

The circumstances of the present case illustrate why a contract of sale between a governmental agency and the owner of property, followed by a judgment for specific performance of that contract, cannot extinguish the interests of lienholders in the same manner as a judgment in condemnation. The Myndyllos agreed to convey their interest in the subject property to the State upon the deposit of $5,000 into court. Ms. Inniss alleges that the property may be worth substantially more than $5,000, but that the Myndyllos had no incentive to bargain for more or to insist upon the institution of condemnation proceedings because the value of the liens on their property exceeded its worth and the other known assets of the Myndyllos were limited. However, the procedure followed by the State deprived Inniss of any opportunity to show that the property is worth more than $5,000.

In contrast, had the State instituted condemnation proceedings, it would have been required to name Ms. Inniss as a defendant, and she thereby would have been afforded the opportunity to participate in the proceedings to establish the fair market value of the property. *See R.* 4:73-2, requiring a condemnation complaint to name as parties not only the record owner but also "such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff"; *see also N.J.S. A.* 20:3-2(c).[2] The proceedings to establish the fair market value of property acquired by eminent domain consist of a hearing before condemnation commissioners, *see N.J.S.A.* 20:3-12; *R.* 4:73-4, and if any party is dissatisfied with the commissioners' award, a trial *de novo* in the Law Division. *See N.J.S.A.* 20:3-13; *R.* 4:73-6.

The availability and significance of the opportunity to participate in the proceedings to establish fair market value was described as follows in *State v. New Jersey Zinc Co.,* 40 *N.J.* 560, 575 (1963):

> The matter of parties defendant is a two-sided coin. It is important to the condemnor that he include all persons, of record 'or otherwise, who have or might claim any interest [in the property], whether that interest be subordinate to that of the owner, as that of a mortgagee or lessee, paramount, as in the case of a governmental lien, or on the same plane, as with a vendee under contract of sale. This is so in order that all such interests may be forever extinguished by the condemnation. *The other side of the coin involves assuring the opportunity to participate in the action to all parties with an interest in the property who could claim all or some portion of the funds ultimately created. Ordinarily participation would take the form of presenting proof, or at least having the opportunity to do so, concerning the fair market value of the property in order that the award would be sufficient to satisfy the interest, if a subordinate one, or to give a person some benefit of his bargain if he stood on the same plane as the owner.* [Emphasis added].

---

[2]As to Ms. Inniss' status as a lienholder entitled to participate in any proceeding to condemn the property, which is not disputed by the State, *see N.J.S.A.* 2A:17-17 and *N.J.S.A.* 2A:16-1; *see also Jones v. Parker,* 107 *N.J.Super.* 235, 240-241 (App.Div.1969); *Venetsky v. West Essex Bldg. Supply Co.,* 28 *N.J.Super.* 178, 185-186 (App.Div.1953).

*See also New Jersey Sports & Exposition Auth. v. East Rutherford,* 137 *N.J.Super.* 271 (Law Div.1975).

The procedures followed by the State in this case deprived Ms. Inniss of the opportunity provided by a condemnation action to participate in proceedings "concerning the fair market value of the property." [40 *N.J.* at 575]. Therefore, those procedures constituted an improper attempt by the State to circumvent the protections afforded lienholders by the Eminent Domain Act.

The State also argues that Ms. Inniss would be precluded from claiming any proceeds from a condemnation of the subject property because the Myndyllos held title by the entirety and Inniss' judgment was solely against Mr. Myndyllo. However, we conclude that the Myndyllos' tenancy by the entirety could be destroyed either by a voluntary conveyance to the State or by condemnation.

In *Fort Lee Savings & Loan Ass'n v. LiButti,* 55 *N.J.* 532 (1970), the Supreme Court held, on the basis of a dissenting opinion in this court by Judge Carton, 106 *N.J.Super.* 211, 214 (App.Div.1969), that where realty held in a tenancy by the entirety is subject to a foreclosure sale, any surplus monies received from the sale are not held by the entirety and hence a judgment creditor of one spouse may obtain that spouse's share of the surplus. In his opinion adopted by the Supreme Court, Judge Carton stated:

> The social purpose of the tenancy by the entirety seems to be to solidify the marital status by encouraging and protecting home ownership and to protect and insulate the institution of marriage from the onslaught of creditors. Upon death of one of the spouses, it assures the survivor, normally the wife, possession of a home free and clear of the individual indebtedness of the other.
>
> But whatever social purpose this tenancy was designed to serve in the interest of married parties and whatever the reasons for its continued existence in this State, there is no justifiable basis for extending it to the personal property which replaces it. To indulge in the further fiction necessary to achieve such a result serves no useful purpose and acts to frustrate justice. Furthermore, it runs counter to the policy of this State against recognizing the existence of tenancies by the entirety in personalty. [*Id.* at 216–217; citation omitted].

■ Although *LiButti* suggests that the proceeds of a condemnation action may continue to be held by the entirety due to the involuntary nature of condemnation proceedings, we conclude upon further reflection that there is no significant difference between the surplus resulting from a mortgage foreclosure action and the compensation paid in a condemnation action; in many circumstances, a landowner has the same lack of voluntary control with respect to mortgage foreclosure as with respect to condemnation. Therefore, we hold that the proceeds of a conveyance of realty are personalty and cannot be held by the entirety, regardless of whether the realty is conveyed voluntarily or pursuant to a judgment in condemnation.

Accordingly, the order granting summary judgment in favor of the State and the subsequent order providing for the distribution of the proceeds of the sale of the Myndyllo property are reversed and the matter is remanded to the trial court for further proceedings in conformity with this opinion.