**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4542-13T2

N.T.B.,

    Plaintiff-Respondent,

v.

D.D.B.,

    Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| September 9, 2015 |
| APPELLATE DIVISION |

Submitted April 27, 2015 — Decided September 9, 2015

Before Judges Lihotz, Espinosa and St. John.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket Nos. FV-06-1087-14 and FV-06-1078-14.

Robert S. Greenberg, attorney for appellant.

Respondent has not filed a brief.

The opinion of the court was delivered by

ST. JOHN, J.A.D.

In this appeal, we must determine whether a spouse's destruction of a door within the couple's jointly-owned marital home may constitute the predicate act of "criminal mischief," N.J.S.A. 2C:17-3, thereby supporting a finding of an act of domestic violence pursuant to the Prevention of Domestic

Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  The matter

arises from two domestic disputes between plaintiff-husband

N.T.B. and defendant-wife D.D.B.  During the course of separate

incidents, plaintiff destroyed audio speakers located within

defendant's bedroom and later broke down her bedroom door.

After plaintiff broke down the door, defendant struck him in the

face.  The parties filed cross-complaints alleging domestic

violence.  Following a non-jury trial, the Family Part judge

denied defendant's request for a final restraining order (FRO).

The judge granted plaintiff's request and entered u against

defendant to protect plaintiff from further abuse.

Defendant argues the trial judge erred in holding

plaintiff's destruction of the speakers did not amount to

criminal mischief because the speakers were not the "property of

another."  N.J.S.A. 2C:17-3(a)(1).  Further, she avers the judge

erroneously determined plaintiff's conduct was insufficient to

establish "harassment" under N.J.S.A. 2C:33-4.  Finally,

defendant challenges the sufficiency of the evidence supporting

the trial judge's conclusion she committed an act of "simple

assault," N.J.S.A. 2C:12-1(a), which involved domestic violence

supporting the entry of an FRO against her.

On appeal, defendant does not challenge the trial judge's

determination that the bedroom door was not the property of

another under <u>N.J.S.A.</u> 2C:17-3. However, we deem this concession to be misinformed and we choose to address this important question to clarify the rights of spouses when the issue arises in the context of whether conduct amounts to domestic violence. <u>See</u> <u>R.</u> 2:10-5; <u>cf.</u> <u>Vas v. Roberts</u>, 418 <u>N.J. Super.</u> 509, 524 (App. Div. 2011) (holding exercise of original jurisdiction proper where the question raised "implicates the public interest" and is "purely one of law [with] no facts bearing on that question . . . in dispute").

Upon our review, we hold plaintiff's destruction of the door forming part of the jointly-owned marital home constituted criminal mischief through harm to the "property of another," and plaintiff's conduct supported a finding of domestic violence. Additionally, we determine the judge's findings as to plaintiff's destruction of the speakers were insufficient, requiring remand for further findings as to which of the parties maintained a tangible property interest in those items. We affirm the judge's rejection of defendant's argument that plaintiff committed an act of domestic violence through the predicate act of harassment. Lastly, we conclude the trial judge failed to set forth sufficient facts or legal analysis supporting the decision to enter an FRO against defendant on the basis of her striking plaintiff, and remand for a determination

A-4542-13T2

of whether she acted in self-defense or defense of the parties' child, who was also present.

## I.

The record discloses the following facts and procedural history. The parties were married in March 2012. Prior to the marriage, plaintiff obtained a temporary restraining order (TRO) against defendant after she burned him with a curling iron. The order memorializing this TRO is not included in the record before us.

At the time of the events giving rise to this appeal, the parties resided together with their eight-year-old daughter in a jointly-owned home. Plaintiff filed for divorce in December 2013 and, as of March 2014, the spouses were sleeping in separate bedrooms within the home.

On the evening of March 30, 2014, defendant was listening to music on speakers located in her bedroom. Plaintiff became upset regarding the volume of the music, and told her to lower it. Defendant refused, at which point plaintiff entered defendant's bedroom and poured juice on the speakers. When the juice failed to silence the music, plaintiff proceeded to tear the speakers' plug from the wall, take them into the bathroom and throw them into the toilet.

The following evening, the parties were arguing in the living room. Accompanied by the parties' child, defendant went into her bedroom and locked the door. According to defendant, plaintiff attempted to open defendant's bedroom door and, upon realizing it was locked, shouted: "Don't lock no motherfucking doors in my house." Plaintiff disputed the statement. He then broke the door open by slamming his body against it, splintering the door frame in the process. Defendant alleged plaintiff then prevented her from leaving the room. In order to get around him and out of the room, defendant stated she slapped plaintiff in the face. Plaintiff denied obstructing his wife's path, and testified she punched him in the face without provocation while she was storming out of the room.

The spouses subsequently filed cross-complaints, each seeking an FRO against the other, which were consolidated for trial before the same Family Part judge. The parties were the sole witnesses at the FRO hearing.

Defendant argued plaintiff's actions in destroying her speakers and breaking down the bedroom door constituted both criminal mischief and harassment, thereby justifying a finding of an act of domestic violence and the entry of an FRO against him. Plaintiff averred defendant's striking him as she was leaving her bedroom on the evening of March 31 established an

5                                              A-4542-13T2

act of domestic violence through the predicate act of simple assault.

Following testimony, the judge reviewed each party's allegations under the two-pronged framework provided by Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). She denied defendant's request for an FRO against plaintiff. In so ruling, the judge first concluded, as to criminal mischief, defendant failed to meet her burden of establishing domestic violence by a preponderance of the evidence because "the speakers and the bedroom door [were] within the marital home that is shared by the parties, both appearing to be marital property," and therefore were not the "property of another" as required by N.J.S.A. 2C:17-3. "In other words," the judge reasoned, "the statute does not prohibit a person from causing damage to their own property." Regarding harassment, the judge similarly held defendant failed to establish any of the elements constituting the offense as provided in N.J.S.A. 2C:33-4.

In assessing plaintiff's request for an FRO on the basis of defendant's striking him, the judge held he proved by a preponderance that defendant struck him in the face, "[w]hether by way of a slap or . . . a punch."[1] As to Silver's second

---

[1] The court rejected plaintiff's argument defendant committed an act of domestic violence by harassment, stating: "It may be
(continued)

prong, the judge determined an FRO was necessary to protect plaintiff from future acts of domestic violence by defendant. Although cognizant of the courts' concern "with the serious policy implications of permitting allegations of this nature to be branded as domestic violence and used by either spouse to secure rulings on critical issues" in subsequent divorce proceedings, Murray v. Murray, 267 N.J. Super. 406, 410 (App. Div. 1993), the judge concluded the history of defendant's violent behavior towards plaintiff — as demonstrated by the earlier grant of a TRO against her prior to the marriage — wholly supported the entry of an FRO.

Defendant appeals both the denial of her request for an FRO and the grant of the FRO against her. We consolidated the matters on appeal.

II.

Our review of a Family Part judge's findings following a bench trial is a narrow one. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and

_____

(continued)
annoying to him [having to] liv[e] in the same house with her, but it doesn't satisfy the definition of harassment because [the court] can't find that [defendant] does that with the purpose to harass [plaintiff]."

A-4542-13T2

the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013), certif. denied, 216 N.J. 587 (2014).  In other words, we will neither "'engage in an independent assessment of the evidence as if [we] were the court of first instance,'" N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)), nor "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Cesare, supra, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  On the other hand, where our review addresses questions of law, a "trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., supra, 351 N.J. Super. at 434 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

### A.

We first must determine whether plaintiff's actions, as found by the trial judge, support a finding of an act of

domestic violence through the predicate act of criminal mischief. See N.J.S.A. 2C:25-19(a).

The PDVA was enacted in furtherance of New Jersey's "strong policy against domestic violence." Cesare, supra, 154 N.J. at 400. Domestic violence occurs when an adult or emancipated minor commits one or more of the enumerated acts upon a person covered by the PDVA. N.J.S.A. 2C:25-19(a). When determining whether to grant an FRO pursuant to the PDVA, a trial judge must engage in a two-step analysis. Silver, supra, 387 N.J. Super. at 125-26. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"); R. 5:7A(d) (mirroring the language of N.J.S.A. 2C:25-29(a)).

However, the occurrence of a predicate act does not, by itself, warrant the issuance of an FRO. Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995); Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995). The second inquiry determines "whether the court should enter a restraining order that provides protection for the victim." Silver, supra, 387

N.J. Super. at 126; see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (explaining that an FRO should not be issued without a finding by the court that "'relief is necessary to prevent further abuse'" (quoting N.J.S.A. 2C:25-29(b))).

Criminal mischief, as defined by N.J.S.A. 2C:17-3(a), is one of the predicate acts constituting domestic violence. N.J.S.A. 2C:25-19(a)(10). Under N.J.S.A. 2C:17-3(a)(1), an individual is guilty of criminal mischief if he or she "[p]urposely or knowingly damages tangible property of another." Here, there can be no dispute plaintiff acted "purposely or knowingly" and did, in fact, "damage" the door and speakers. Therefore, we limit our inquiry to whether those items damaged were "property of another" as used in the criminal mischief statute. N.J.S.A. 2C:17-3(a)(1).

N.J.S.A. 2C:17-3 itself does not define what constitutes "property of another." However, the model jury charge for criminal mischief instructs trial judges, "[w]here appropriate, [to] charge that property of another includes property partly owned by defendant in which any other person has an interest which defendant is not privileged to infringe." Model Jury Charge (Criminal), "Criminal Mischief — Purposeful or Knowing Damage to Tangible Property (N.J.S.A. 2C:17-3(a)(1))" (2005) (citing N.J.S.A. 2C:20-1(h)); cf. N.J.S.A. 2C:17-1(f) (for

purposes of arson statute, "[p]roperty is that of another . . . if any one [sic] other than the actor has a possessory, or legal or equitable propriety interest therein"); N.J.S.A. 2C:20-1(h) (for purposes of theft and related offenses, "'[p]roperty of another' includes property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property").

The trial judge concluded defendant failed to prove that plaintiff damaged the "property of another" because the door and its frame were "marital property" and the statute does not prohibit plaintiff from damaging his own property. We disagree.

The record demonstrates that the parties acquired the home during their marriage. "The Legislature has determined that a tenancy by the entirety shall be created when 'a husband and wife together take title to an interest in real or personal property under a written instrument designating both of their names as husband and wife.'" Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 229 (Ch. Div. 2006) (quoting N.J.S.A. 46:3-17.2(a)), aff'd in part and remanded in part, 398 N.J. Super. 299 (App. Div.), certif. denied, 195 N.J. 521 (2008); see also N.J.S.A. 46:3-17.3 ("No instrument creating a property interest on the part of a husband and wife shall be

11

construed to create a tenancy in common or a joint tenancy unless it is expressed therein or manifestly appears from the tenor of the instrument that it was intended to create a tenancy in common or joint tenancy.").

A tenancy by the entirety is a form of joint property ownership available only to spouses that is created "when property is held by a husband and wife with each becoming seized and possessed of the entire estate."  Asterbadi, supra, 389 N.J. Super. at 227.  Each co-tenant enjoys the right of survivorship: "after the death of one, the survivor takes the whole."  Ibid. (citing 13 New Jersey Practice, Real Estate Law and Practice § 5.6, at 67-68 (John A. Celentano, Jr.) (2d ed. 2002)). Notwithstanding the genesis "based on the unity of husband and wife at common law, [tenancies by the entirety] survive as a means of protecting marital assets during coverture and as security for one spouse on the death of the other."  Ibid. at 228 (citing Freda v. Commercial Trust Co. of N.J., 118 N.J. 36, 46 (1990)).

Therefore, although "[a] tenant by the entirety can alienate his or her right of survivorship, and a judgment creditor of either spouse may levy and execute upon such right," neither tenant may force the involuntary partition of the

subject property during the marriage.  <u>Ibid.</u> at 227.[2]  Similarly,

the ability of a judgment creditor of one of the spouses to

"levy upon and sell that spouse's right of survivorship as well

as his or her undivided one-half interest in the life estate for

the joint lives of the tenants . . . remains subject to the

survivorship interest of the non-debtor spouse."  <u>Ibid.</u>

Despite these well-settled protections for and limitations

upon tenants by the entirety that serve to distinguish the

estate from other forms of joint property ownership, "[e]ach

tenant by the entirety is a tenant in common with the other

during the joint lives of the spouses."  <u>Newman v. Chase</u>, 70

<u>N.J.</u> 254, 259 (1976); <u>see also</u> <u>Vander Weert</u>, <u>supra</u>, 304 <u>N.J.</u>

<u>Super.</u> at 345 ("In sum, it is, during the marriage, essentially

an undivided tenancy in common for the joint lives of the

spouses subject to the right of survivorship of each.").  As we

have previously explained, a tenant in common has "an undivided

interest . . . that encompasses the entire property."  <u>Burbach</u>

---

[2]    "Upon divorce, the tenancy by the entirety was historically
converted, by operation of law, into a tenancy in common, the
interest of each spouse then defined as a determinable undivided
one-half interest subject to partition or execution sale."
<u>Vander Weert v. Vander Weert</u>, 304 <u>N.J. Super.</u> 339, 346 (App.
Div. 1997).  This automatic conversion of the estate, as a
matter of law upon divorce, persists.  <u>See</u> <u>Di Santo v. Adase</u>,
116 <u>N.J. Super.</u> 226, 228 (App. Div. 1971) ("An absolute divorce
terminates the marital relationship and converts an estate by
the entirety into a tenancy in common.").

v. Sussex Cnty. Mun. Utils. Auth., 318 N.J. Super. 228, 233 (App. Div. 1999).  Each co-tenant "'has a separate and distinct freehold title,'" and each holds his or her "'title and interest independently of the others.'"  Ibid. (quoting 4 Thompson, Real Property § 1795 (1979)); see also Dorf v. Tuscarora Pipe Line Co., 48 N.J. Super. 26, 34-37 (App. Div. 1957); Ross v. Ross, 35 N.J. Super. 242, 246-47 (Ch. Div. 1955).  Thus, it is clear that plaintiff and defendant each held a separate and distinct interest in the home.

We therefore conclude, in breaking down defendant's bedroom door, plaintiff did destroy property of another and therefore committed the predicate act of criminal mischief.  N.J.S.A. 2C:25-19(a)(10).  To conclude otherwise would permit a spouse to purposely and maliciously totally destroy his or her jointly-owned marital home, without sanction, leaving no recourse for the innocent spouse to secure an FRO on the basis of the home's ruin.  We cannot abide such a result and are therefore constrained to reverse.  We hold that plaintiff's actions resulted in damage to defendant's undivided interest in the home as a tenant by the entirety and, thus, the trial judge erred in determining that plaintiff had not damaged "property of another" under N.J.S.A. 2C:17-3(a)(1).

14

Furthermore, we disagree with the trial judge's conclusion that plaintiff's pouring juice on the speakers, tearing them out from the wall, and throwing them in the toilet did not establish criminal mischief through damage to the property of another. Before the Family Part judge, defendant testified the speakers belonged to her and, as such, were kept in her bedroom. Plaintiff, contrarily, averred: "[t]hose speakers . . . [were] marital property. They were purchased during our marriage and they were . . . an article located inside of our home."

In rejecting defendant's argument, the judge did not set forth any facts supporting the proposition the parties jointly purchased the speakers or any other indicia that plaintiff had a tangible interest in the speakers as personalty. Nor did the judge undertake the requisite legal analysis to determine whether the speakers, as personal property, were the "property of another" for the purpose of N.J.S.A. 2C:17-3(a).

We therefore reverse the trial judge's holdings that neither the door nor the speakers were the "property of another" under the criminal mischief statute. As to the door, having determined it was the "property of another" pursuant to N.J.S.A. 2C:17-3(a), the destruction of which thereby constituting an act of domestic violence, N.J.S.A. 2C:25-19(a)(10), we remand for a determination of whether an FRO is necessary to protect defendant

from harm. See Silver, supra, 387 N.J. Super. at 126-27. Regarding the speakers, on remand, the Family Part judge should make specific factual findings as to when, how and by whom they were purchased, for the purpose of determining whether plaintiff enjoyed any tangible proprietary interest in them.

In order to assist the trial judge in the determination, we add the following comment. We disagree with the proposition that, under New Jersey law, any personal property acquired during the marriage automatically becomes joint property. At common law, "[t]here [was] no tenancy by the entirety in personal property in this State." Kelly v. Kelly, 135 N.J. Eq. 75, 77 (Prerog. Ct. 1944); see also State, Dep't of Treasury v. Myndyllo, 225 N.J. Super. 302, 308 (App. Div. 1988) (holding "that the proceeds of a conveyance of realty are personalty and cannot be held by the entirety"). In 1988, the Legislature enacted N.J.S.A. 46:3-17.2, which recognizes the establishment of a tenancy by the entirety in personal, as well as real, property. Although it departs from the common-law rule, the statute requires that, for acquired personalty to be considered joint property held by the entirety, the spouses must "take title to an interest [therein] . . . under a written instrument designating both of their names as husband and wife." N.J.S.A. 46:3-17.2(a). Absent evidence of such an instrument, the

common-law prohibition against personal property being held by the entirety prevails.

                                    B.

Defendant also challenges the trial court's conclusion that plaintiff's destruction of the speakers and the door did not support a finding of an act of domestic violence through the predicate act of harassment. N.J.S.A. 2C:25-19(a)(13). N.J.S.A. 2C:33-4 provides, in pertinent part:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with the purpose to alarm or seriously annoy such other person.

The trial judge determined defendant failed to establish harassment under any of the statutory elements. On appeal, defendant contends the judge erred with respect to subsection (c), arguing plaintiff's actions amounted to a "course of

alarming conduct" supporting a finding of an act of domestic violence.  We disagree.

The Supreme Court has held that a violation of subsection (c) "require[s] a course of alarming conduct or a series of repeated acts, along with proof of a purpose to alarm or seriously annoy."  J.D., supra, 207 N.J. at 486.  Defendant has not alleged, nor does the record suggest, plaintiff committed any repeated objectionable acts.  Therefore, plaintiff "can only be in violation of subsection [(c)] if he engaged in a 'course of alarming conduct' within the meaning of the statute."  Ibid. (quoting N.J.S.A. 2C:33-4(c)).

Even though N.J.S.A. 2C:33-4(c) does not define "course of conduct" as it applies to harassment, the Legislature has clarified that in other contexts, such as stalking, "two or more" instances of behavior covered under the statute is sufficient.  See N.J.S.A. 2C:12-10(a)(2).  Since plaintiff admits to destroying the speakers and defendant's bedroom door on separate nights — two distinct occasions — there can be no dispute he engaged in a "course of conduct" as contemplated by N.J.S.A. 2C:33-4.

However, in addition to a repeated act or course of conduct, "the statute requires that the victim . . . be the target of harassing intent."  J.D., supra, 207 N.J. at 486.

18                                                    A-4542-13T2

"Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." Ibid. at 487 (citation omitted). Similarly, "[t]he victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Ibid.

We agree with the trial judge defendant failed to prove by a preponderance of the evidence that plaintiff's purpose in undertaking his course of conduct was to harass her. Regarding the speakers, plaintiff testified he destroyed them to stop the loud music he found so objectionable. He further stated he broke down defendant's bedroom door "out of frustration." In her testimony, defendant did not rebut plaintiff's explanation of the motivation underlying these two acts. Consequently, we conclude defendant did not establish that plaintiff acted with the intent to harass her. We affirm the trial judge's determination the facts did not support a finding of domestic violence through the predicate act of harassment.

C.

Finally, we must determine whether the trial judge erred in granting plaintiff's request for an FRO against defendant, through the predicate act of "simple assault," N.J.S.A. 2C:25-

19(a)(2), on the basis of her striking him in the face after he broke down the door.

As we have noted, the grant of an FRO under the PDVA requires application of Silver's two-step analysis. Silver, supra, 387 N.J. Super. at 125-26. First, the court must determine whether one of N.J.S.A. 2C:25-19(a)'s predicate acts has occurred. Ibid. at 125. Where the record supports such a finding, it must then analyze whether an FRO is necessary to protect the victim from further abuse. J.D., supra, 207 N.J. at 476.

"Although this second determination . . . is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)(1)-(6)], to protect the victim from an immediate danger or to prevent further abuse." Silver, supra, 387 N.J. Super. at 127. The nonexclusive statutory factors include the "previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse," the "existence of immediate danger to person or property," and the "best interests of the victim and any child." N.J.S.A. 2C:25-29(a)(1)-(2), (4).

Here, the judge found defendant committed the predicate act of simple assault, "[w]hether by way of a slap or by way of a

punch," and did so "[either] out of frustration or out of an effort to get by him more quickly as she made her way out of the house." The implications which attach to the reason for the striking of plaintiff have legal consequences unaddressed by the court. If she hit her husband in order to flee from him, as she testified, she may be entitled to a self-defense justification, N.J.S.A. 2C:3-4, a defense-of-her-daughter justification, N.J.S.A. 2C:3-5, or both. Since the judge made no finding, we are constrained to reverse the grant of the FRO against defendant. See J.D., supra, 207 N.J. at 488 ("In entering the FRO, the trial court did not sufficiently articulate findings and conclusions consistent with the statutory standards and our independent review of the record leaves us unsure that there is sufficient evidence to sustain the issuance of the order.").

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Given the trial judge's credibility findings, we remand to a different Family Part judge. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21                                    A-4542-13T2