# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4771-18

P.D.M.,[1]

    Plaintiff-Appellant,

v.

J.L.M.,

    Defendant-Respondent.

_____

Argued May 13, 2020 – Decided July 2, 2021

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1636-19.

Mark J. Molz argued the cause for appellant.

Respondent has not filed a brief.

The opinion of the court was delivered by

---

[1] Pursuant to Rule 1:38-3(d)(9), we use initials to identify the parties to protect the confidentiality of these proceedings.

FUENTES, P.J.A.D.

Plaintiff P.D.M. and defendant J.L.M. had been married for seventeen years at the time of the incident that gave rise to this appeal. They were also together as a couple for eight years prior to their marriage and have a daughter who is now twenty years old. Plaintiff filed a complaint against defendant under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, alleging that at 4:33 p.m. on April 9, 2019, defendant committed the predicate offenses of simple assault, N.J.S.A. 2C:12-1(a), and criminal mischief, N.J.S.A. 2C:17-3, by striking plaintiff's motor vehicle with a stick and shattering its window. Plaintiff and his then paramour and her child were inside the vehicle and sustained minor injuries from the shattered glass.

At 8:15 p.m. on this same day, the Municipal Court Judge of North Hanover Township conducted an ex parte hearing at which plaintiff testified under oath and provided a factual basis for the issuance of a Temporary Restraining Order (TRO) pursuant to N.J.S.A. 2C:25-28(f). Although not entirely clear, we infer from the record made available to us that defendant filed her own PDVA complaint against plaintiff also based on the April 9, 2019 event. This case was first listed before the Family Part on April 18, 2019, but was adjourned to May 7, 2019 to permit plaintiff to amend the TRO. When the

2

matter came before the court for the FRO hearing, plaintiff's TRO had still not been amended.

The parties' cross-complaints came before the Family Part for an FRO trial on May 20, 2019. After hearing the parties' testimony and the testimony of plaintiff's paramour, the judge found plaintiff proved, by a preponderance of the evidence, that defendant committed the predicate acts of criminal mischief and simple assault by striking plaintiff's truck with a stick, "causing the window to shatter, sending glass throughout the cab, and causing injuries" to plaintiff, his paramour, and her young daughter. The two adults sustained minor cuts to their heads and fingers. The judge found the child "sustained a cut to a finger that's not documented, but it's not beyond the belief, given the spray of glass that must have gone into the cab."

Despite these findings, the judge dismissed both complaints and vacated the TRO against defendant. After considering the two-pronged analysis this court established in Silver v. Silver, 387 N.J. Super. 112, 125-27 (2006), the trial judge concluded an FRO was not necessary to protect plaintiff from future acts or threats of violence. We agree and affirm.

Both parties were represented by counsel. Plaintiff called defendant as his first witness at the FRO hearing. She testified that she first learned of

plaintiff's affair with another woman one week before the incident. Plaintiff's counsel questioned defendant directly about how the incident ensued:

Q. So when you saw your husband's vehicle in the driveway, right?

A. Um-hum.

Q. You went outside with the bat.

A. The stick.

Q. Or the stick.

A. The stick.

Q. Okay. And how many times did you strike his vehicle?

A. Once.

. . . .

Q. [How many] windows did you break?

A. One.

Q. Okay. And did you look inside the vehicle before you broke his window?

. . . .

A. No.

Defendant admitted that she sent plaintiff the following text message after the incident: "You are a rotten son of a bitch bringing her to my fucking house.

4

You're no fucking good and neither is she. Put her daughter in a car and put her in danger like that. You guys are fucked up."

On cross-examination, defendant testified that she separated from plaintiff a week before the incident after he told her about the extramarital affair. She expressly told plaintiff not to bring the woman with him when he came to the house. Defendant testified that at 12:15 p.m. on April 9, 2019, she texted plaintiff and asked him "if he was going to go to the house to let the dogs out in the afternoon." Defendant claimed plaintiff never responded to this text.

She went home during her lunch time and parked her car in the driveway "next to the dump truck." According to defendant, they had vehicles "all over their property," but her car was the only one parked next to the dump truck. Defendant testified that she intentionally parked her car next to the dump truck "because I didn't want people coming that were asking me questions and feeling sorry for me. I just didn't want to talk to anybody." Defendant claimed she ran out of the house as soon as she saw that plaintiff had come to their home and brought his paramour. In response to her attorney's questions, defendant provided the following account of what transpired from this point forward:

Q. When you ran out the front door, did you grab any object?

A. A stick.

A-4771-18

Q. You grabbed a stick. And what was your intention when you ran out of the house with the stick?

A. It was just to hit the truck to get off my property.

Q. What part of the truck were you aiming for?

A. Just the tailgate.

Q. Was [plaintiff] in a parked position when you hit the car or was his truck moving?

A. No, he had backed up, and I just thought he could pull it out there. It happened so fast.

THE COURT: Ma'am, when you saw the truck pull up and you moved to leave the house, and you . . . grabbed a stick . . . it was in your mind that he had . . . [the paramour] in the car . . . with him?

A. Yes.

The judge found the truck was approximately forty to fifty feet away from defendant when she first came out of the house. Defendant also testified she did not intend to hurt anyone when she struck the side of plaintiff's vehicle.

Against this evidence, the judge made the following findings and conclusions of law:

> There's no history of domestic violence. It was a discrete event. I cannot find that it was premeditated.
>
> So it's an event that stands on its own, . . . something of an anomaly in the relationship, or at least as it

extends wife to husband. But it would be -- it's difficult to describe it as a contretemps, because of the sheer scariness of it. But it has a similarity to a contretemps in its isolated and discrete nature. So there's no history of domestic violence between the parties.

But as I said, there is no history. There's absolutely no history. I've heard nothing about the character of this woman vis-à-vis the relationship with her husband that ever suggested that this would happen. It did, and it's -- that it did is unforgiveable, but it doesn't -- it's not predictive of future acts of domestic violence. This happened ten days after she had been body slammed with the revelation that her 25-year relationship was out the window, without the benefit of, so far as I know, suspicions, separations, those kinds of things that finally come to a head and somebody says oh, you know. I'm out of here.

[D]efendant is devastated by this. And I truly believe that she is devastated today as much by what she did as by why she did it. So I don't think, by any standard -- well, certainly not by preponderance of the evidence. There's always a risk. I could be wrong.

I, as in every other case, I hope, that I'm true to my oath, that I could do justice, to do the right thing, and to view the evidence as it -- as it presents itself.

Now, I hope . . . [I] dearly hope that I am not wrong in drawing this conclusion. But I think to issue a final restraining order would only -- would have no other purpose than to add to this defendant's pain. She's very broken. As I said, she's broken as much by what her husband has done to her as by what she did and might have done, and the consequences that might have flowed from that.

A-4771-18

> So I find that I cannot find that a continuing restraining order is necessary for the protection of this plaintiff. Therefore, the complaint is dismissed. The temporary restraining order is dissolved.

We start our analysis by acknowledging that due to its specific jurisdiction, the Family Part has developed a "special expertise in the field of domestic relations" that warrants deferential review of matters predicated on factual findings. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). Furthermore, we review a "Family Part judge's findings following a bench trial is a narrow one." N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015). We have also held "that the Legislature did not intend that the commission of any one of these [predicate] acts automatically mandates the issuance of a domestic violence order." A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016), (quoting L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533-34 (App. Div. 2011)).

In this appeal, plaintiff argues the Family Part judge erred when he denied his application for an FRO. We disagree. In making this decision: (1) "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred;" and (2) if one or more predicate acts occurred, the judge must determine "whether a domestic violence restraining order should be issued." Silver, 387 N.J. Super. at 125-126.

8

Our Supreme Court has adopted this approach and reaffirmed that "the guiding standard is whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 125-126). These six statutory considerations are:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1) to (6).]

The Legislature also made clear that the judge "shall grant any relief necessary to prevent further abuse." N.J.S.A. 2C:25-29(b).

Here, the judge considered these factors and found an FRO was not necessary to prevent plaintiff from further abuse by defendant. Defendant's action during this unfortunate encounter was not indicative of a pattern of abusive behavior. As the Family Part judge found, this act of violence was an aberration prompted by defendant's emotionally fragile state of mind. There is no indication that plaintiff is at risk of being assaulted by defendant again. Because the record supports the judge's findings, we discern no legal basis to overturn his ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4771-18