# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0810-20

Z.A.S.C.,

    Plaintiff-Respondent,

v.

A.C.C.,

    Defendant-Appellant.

_____

Submitted January 12, 2022 – Decided March 30, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-0502-21.

A.C.C., appellant pro se.

Cynthia B. Smith, attorney for respondent.

PER CURIAM

Defendant A.C.C. appeals from a final restraining order (FRO) entered under the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to

-35.[1]  The trial court found that defendant had committed predicate acts of terroristic threats and harassment and that there was a need for the FRO to protect plaintiff Z.A.S.C.  Because those findings are supported by substantial credible evidence, we affirm the FRO.

I.

The facts were developed at a three-day trial held in September and October 2020.  Both parties were represented by legal counsel and testified at trial.  Plaintiff also called her father as a witness and defendant called his mother.  The parties married in 2015 and have two children.  In August 2019, plaintiff filed for divorce, but the parties continued to live together until August 2020.

On July 29, 2020, the parties got into an argument about their pending divorce as defendant was packing for a trip to Jamaica.  That same day, defendant filed a harassment complaint against plaintiff, claiming she had threatened him.  Defendant elected not to seek a restraining order against plaintiff, and he told the police he had filed the complaint because he wanted to

---

[1]  We use initials to protect privacy interests and the confidentiality of the record. R. 1:38-3(d)(9) and (10).

A-0810-20

document the incident. Two days later, defendant left for Jamaica and returned on August 10, 2020.

On August 13, 2020, plaintiff sought and obtained a temporary restraining order (TRO) against defendant, alleging that he had threatened her during the argument on July 29, 2020. Thereafter, plaintiff amended her complaint, contending that defendant had harassed her after the TRO had been issued.

At trial, plaintiff testified that during the argument on July 29, 2020, defendant called her offensive names and told her she would not get anything out of the divorce because he would burn the marital home and their vehicles and leave the children homeless. Defendant also told plaintiff: "[I]t only takes one phone call to make . . . something happen to you." When asked what she thought defendant had meant by that statement, plaintiff stated that she believed defendant would call somebody who might harm or kill her. She explained that defendant had made that statement to her before. She also stated that defendant kept a gun in a safe in their home and, during prior incidents, he had moved towards the safe as if he was going to pull out the gun.

Plaintiff went on to testify that she felt threatened by defendant's statements and believed he might act on his threats. She explained that she had waited until August 13, 2020, to obtain the TRO because defendant was

traveling to Jamaica, and she did not want to cause him to stay and become even more angry. She also wanted him to go to Jamaica because she believed she would have peace while he was away. When defendant returned from Jamaica, the parties continued to argue, and defendant again threatened to burn the marital home. Consequently, plaintiff sought the TRO on August 13, 2020.

Plaintiff also testified to events that occurred after defendant was served with the TRO. She explained that defendant had come to the home multiple times with police escorts. She also stated that defendant had taken a car without permission. Plaintiff stated that she felt threatened because she thought defendant could return to the home at any time and harm her. Plaintiff was also concerned that defendant had changed the passcodes on the surveillance cameras in the home and that he was watching her.

Concerning her need for an FRO, plaintiff testified she feared defendant would continue to harass her and might kill her. She stated: "I fear for my life. I fear that he may come back to do more harm."

Plaintiff's father corroborated plaintiff's testimony about her fear of defendant. Although the father did not witness any of the events, he stated that following the events, plaintiff was "very upset and very shaken" and was "in pure fear."

4

In his testimony, defendant denied telling plaintiff that she could not have the marital home or their vehicles and denied threatening to burn the home or the vehicles. In contrast to plaintiff's testimony, defendant stated that plaintiff had threatened him by telling him she knew people who would beat him up. He also believed that plaintiff had obtained the TRO as revenge for his harassment complaint against her.

Defendant admitted he had gone to the marital home after he was served with the TRO, and he had taken one of the cars. Defendant later pled guilty to contempt, N.J.S.A. 2C:29-9(b)(2), for violating the restraining order. He also claimed that he had returned to the marital home several times with police escorts because he needed to retrieve various items.

Defendant's mother was called to testify about plaintiff's alleged threats and history of violence towards defendant. Her testimony, however, revealed that she had no first-hand knowledge and that her knowledge was based on what defendant had told her.

After hearing the testimony at trial, on October 5, 2020, the trial court made findings of fact and conclusions of law on the record. The court found plaintiff's testimony to be credible and consistent. In contrast, the court found

defendant's testimony to be less credible concerning the argument on July 29, 2020, and the incidents that followed.

Relying on plaintiff's testimony, the court found that defendant had made terroristic threats against plaintiff. In that regard, the court found that defendant had threatened to burn the parties' house down and to burn their vehicles. The court also credited plaintiff's testimony that defendant had threatened her when he stated: "[I]t only takes one phone call to make . . . something happen to you." The court also found that defendant had threatened plaintiff by moving towards the safe that contained a gun during arguments. Accordingly, the court found that defendant intended to threaten plaintiff and a reasonable person would believe that defendant would carry out his threats.

The trial court also found that defendant had harassed plaintiff after the TRO had been issued. Crediting plaintiff's testimony, the court found that defendant had returned to the home multiple times with the purpose of annoying and harassing plaintiff. The court rejected defendant's claim that he needed to retrieve items from the marital home and instead found that defendant's actions were purposeful and were meant to annoy plaintiff. The court also found that plaintiff needed an FRO to protect her from further abuse and that an FRO was

A-0810-20

necessary to protect her health, safety, and welfare. Accordingly, that same day, the court entered an FRO against defendant.

## II.

On appeal, defendant argues that the trial court erred in finding that he had made terroristic threats and engaged in harassment. He also argues that the court erred in not allowing his mother to testify about plaintiff's "volatile and violent" behavior towards him.

Our scope of review of the grant or denial of an FRO is limited. See C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We accord substantial deference to family judges' findings of fact because of their special expertise in family matters. N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will "not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alteration in original) (quoting In re Forfeiture of Pers. Weapons &

Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)). "[W]e owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

The Act was passed to further New Jersey's "strong policy against domestic violence." N.T.B. v. D.D.B., 442 N.J. Super. 205, 216 (App. Div. 2015) (quoting Cesare, 154 N.J. at 400). Domestic violence occurs when an adult or emancipated minor commits one or more of the predicate acts identified by the Act. N.J.S.A. 2C:25-19(a). When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"). Second, the court must determine that a restraining order is necessary to provide protection for the victim. Silver, 387 N.J. Super. at 126-27; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (explaining that an FRO

should not be issued without a finding that relief is "necessary to prevent further abuse" (quoting N.J.S.A. 2C:25-29(b))).

1. Terroristic Threats.

A person is guilty of terroristic threats if that person

> threatens to commit any crime of violence with the purpose to terrorize another or . . . threatens to kill another with the purpose to put [that other person] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

[N.J.S.A. 2C:12-3(a) and (b).]

Here, the trial court found that defendant had threatened to burn the marital home and the parties' vehicles and to contact another person who could harm or kill plaintiff. The court also found that defendant had placed plaintiff in reasonable fear for her safety when, during prior arguments, he had moved towards a safe that contained his gun. Crediting plaintiff's testimony, the court found that those statements and actions had been done with the purpose to put plaintiff in imminent fear of harm or death and reasonably caused her to believe the threats would be carried out. Those findings are supported by substantial credible evidence in the record.

A-0810-20

2. Harassment.

The harassment statute provides that a person commits harassment

> if, with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

Here, the trial court found that defendant had harassed plaintiff after the TRO was entered by purposely going to the marital home on multiple occasions. The trial court rejected defendant's testimony that he had gone there with police escorts on several occasions because he needed to retrieve various items. Instead, the trial court found that defendant had gone to the home after the TRO was issued to annoy plaintiff and to demonstrate to her that he could still exert power and control over her and the parties' property. The trial court also found that defendant had harassed plaintiff by returning to the home multiple times over several weeks with police escorts despite the restraining order limiting

10

defendant's entry into the home to a thirty-minute period to remove his belongings. There was substantial credible evidence that defendant acted with the purpose to harass plaintiff.

Defendant argues that the trial court "overreached" in finding that he made terroristic threats and engaged in harassment. In making that argument, defendant is simply disagreeing with the factual findings made by the trial court. The evidence at trial supported the trial court's findings and, therefore, we reject defendant's argument.

Defendant also contends that the trial court erred in not allowing his mother to testify about plaintiff's "volatile and violent behavior directed at . . . defendant." A review of the mother's testimony reveals that she did not have first-hand knowledge of plaintiff's behavior towards defendant. Instead, she was relying on what defendant had told her about various events. We discern no error in the trial court's decision to not permit hearsay testimony from the mother. See N.J.R.E. 801 (defining "hearsay" as an out-of-court statement that is offered to prove the truth of the matter asserted); see also State v. Scharf, 225 N.J. 547, 572 (2016) ("[T]rial courts are granted broad discretion in making decisions regarding evidentiary matters, such as whether a piece of evidence is

relevant and whether a particular hearsay statement is admissible under an appropriate exception." (internal citations omitted)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0810-20