# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0448-24

K.M.C.,[1]

    Plaintiff-Respondent,

v.

W.E.P.,

    Defendant-Appellant.

_____

Submitted November 10, 2025 – Decided January 8, 2026

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FV-21-0348-24.

Perrotta, Fraser and Forrester, LLC, attorneys for appellant (Donald B. Fraser, Jr., on the briefs).

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for respondent (Rachel E. Campbell and Mathew C. Dorsi, on the brief).

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

PER CURIAM

Defendant W.E.P. appeals from the entry of a final restraining order ("FRO") against him under the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, after a five-day hearing. After our careful review of the record and application of the pertinent legal principles, we affirm based on the cogent reasons expressed by Judge Christopher M. Troxell in his thorough oral decision.

I.

Plaintiff K.M.C. and defendant were in a long-term dating relationship and lived together from approximately April 2019 through January 16, 2024. They were not married and had no children together. On January 16, 2024, plaintiff called police, and filed a complaint alleging defendant verbally abused her, destroyed property, assaulted and strangled her, threatened to kill her, and inflicted physical injuries. Plaintiff obtained a temporary restraining order ("TRO") at that time.

In addition to specific allegations of predicate acts of domestic violence noted above, the complaint and a subsequent amendment referenced prior incidents including one in which defendant allegedly "got in plaintiff's face," screamed at her, threw a coffee cup at her ribs, further berated her, and caused

A-0448-24

bruising and a possible fracture. The compliant further alleged prior acts in which defendant called plaintiff vulgar names, chased her, threw a chair, and flipped a table onto her legs causing bruises. It also alleged further prior incidents in which defendant told plaintiff he wanted "to take her in the backyard and gut her like a fish," and pulled her hair, shook her, and strangled her. Plaintiff further asserted defendant told her on multiple occasions that if she "ever got in the way of him owning weapons, he would eliminate her."

At the FRO hearing plaintiff testified consistent with the allegations in her amended complaint describing numerous acts of verbal, physical, and emotional abuse, including threats to her life, strangulation, bruises, and the necessity to relocate and use a P.O. Box out of fear for her safety. She testified that defendant made clear that if she interfered with his weapons ownership, he would "end her life." Defendant testified and denied committing the alleged acts and also presented six witnesses who testified on his behalf.

The trial court found, by a preponderance of the evidence, plaintiff had proven defendant had committed predicate acts of harassment, assault, and terroristic threats, which were based on plaintiff's credible, consistent testimony and corroborating physical evidence including photos and videos. The trial court noted plaintiff's emotional demeanor, consistency, and supporting physical

3 A-0448-24

evidence and photographs. The court also found defendant's testimony credible regarding the overall troubled nature of the relationship, his feelings of being "trapped," and about both parties giving up on the civil restraint agreement previously entered surrounding a prior incident. Concerning defendant's denial to threatening "to terminate" plaintiff's life or committing other acts of violence, the court found "when [defendant] said he didn't do any of it [and] he just flat out denied it, that wasn't believable."

The court also determined there were prior acts of domestic violence proven, including credible evidence of previous assaults substantiating such a history. The court found plaintiff credibly testified that she remained in fear, thought she would be killed, and had taken significant steps including moving and obtaining a PO Box to avoid detection by defendant. The court found her fear was genuine. The court stated, "[Plaintiff] believes she's in immediate danger." The court further found "there's good cause for her again to be concerned, to fear for her life, safety, or well-being . . . and that there's a need to deter and prevent further abuse." The court further found the six witnesses that testified for defendant were either not credible or the information they provided was not probative to its analysis under Silver.

A-0448-24

The court entered an FRO, after finding the statutory factors for the predicate acts were met and emphasizing the need to protect the victim, per N.J.S.A. 2C:25-29 and Silver.[2]  The record further reflects subsequent to the trial defendant was sentenced to state prison for weapons and assault convictions.[3]

On appeal, defendant contends the "FRO obtained by [plaintiff] against [defendant] must be dismissed due to the lack of evidence to establish the second prong of Silver, and the lack of findings by the trial court relative to same." Defendant contends the second prong of Silver was not met because at the time of the hearing defendant was incarcerated and he remains incarcerated and has "zero ability to commit any 'further' direct acts of physical domestic violence against [plaintiff.]"  He claims since his arrest there has not been "even a scintilla of any 'further' act of [d]omestic [v]iolence" either directly, nor indirectly or through a third party.  Defendant further asserts that there were not

---

[2]  Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

[3]  Defendant's briefing advises he was sentenced on March 21, 2025, on several weapons charges.  Specifically, defendant was sentenced to a state prison term of six years, with forty-two months parole ineligibility.  At the same time, the court also sentenced defendant to a prison term of four years on third-degree aggravated assault for the incident which is the subject of this appeal with such four-year term to run concurrent with the sentence on the weapons charges.

any contempt allegations against him and "there are simply no continuing ties whatsoever between [the parties]" because they have "no children together. . . [t]hey were not married to each other; hence, there is no financial issue[s] between them." Defendant contends due to his continuing incarceration . . . [both] at the time of trial and [through] today, [plaintiff] simply lacked any reasonable, objective fear of 'further' domestic violence committed against her by [defendant]" and therefore the second prong of Silver has not been met. Therefore, defendant concludes, "there is simply zero reason for [the parties] to ever again have any contact with each other and "this was true at the time of trial." We disagree.

## II.

The scope of appellate review of a Family Part court's findings following a bench trial is limited. N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Cesare, 154 N.J. at 413 (citations omitted). Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

6

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The PDVA authorizes an FRO to be issued if two criteria are met. Silver, 387 N.J. Super. at 125. The plaintiff seeking the FRO must prove that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," and (2) that the order is necessary to protect plaintiff "from an immediate danger or to prevent further abuse." Id. at 125, 127.

When evaluating the second prong, which is the only prong contested before us, the court must consider:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
> (2) The existence of immediate danger to person or property;
> (3) The financial circumstances of the plaintiff and defendant;
> (4) The best interests of the victim and any child;
> (5) In determining custody and parenting time the protection of the victim's safety; and

7

(6) The existence of a verifiable order of protection from another jurisdiction.
[N.J.S.A. 2C:25-29(a).]

Moreover, when the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO "is most often perfunctory and self-evident." Silver, 387 N.J. Super. at 127. And a single predicate act involving the use of physical force or violence is sufficient to grant an FRO if there is a chance of immediate or continuing danger. See C.C. v. J.A.H., 463 N.J. Super. 419, 435-36 (App. Div. 2020) (rejecting the argument that no history of violence negates the necessity for an FRO and holding the plaintiff's fear combined with the defendant's offensive conduct was sufficient).

We conclude defendant's argument lacks sufficient merit to warrant discussion in a written opinion and we affirm for the reasons set forth in Judge Troxell's oral decision. R. 2:11-3(e)(1)(E). We add only that we reject defendant's contention the second prong of Silver has not been met because he will be incarcerated for a substantial period of time and no reason exists to support plaintiff has a continuing need for an FRO.

An FRO entered under the PDVA remains in effect until it is dissolved by a court for good cause pursuant to N.J.S.A. 2C:25-29(d); see Carfagno v. Carfagno, 288 N.J. Super. 424 (Ch. Div. 1995); see also T.M.S. v. W.C.P., 450

A-0448-24

N.J. Super. 499 (App. Div. 2017) (adopting the trial court's legal analysis in Carfagno).

Initially, we observe defendant was sentenced to a state prison term of six years, with forty-two months parole ineligibility for the weapons charges with a four-year concurrent sentence imposed for the conviction surrounding the acts of domestic violence committed against plaintiff. Therefore, at some point, defendant will be released and presumably will have the ability to contact plaintiff once outside of prison if an FRO is not in effect. In addition, defendant will seemingly have the opportunity to contact outside individuals from prison by way of phone calls, correspondence, or other permitted mediums and therefore, he would be capable of contacting plaintiff if an FRO is not in effect barring such. Since under the PDVA an FRO is a permanent order unless otherwise dissolved, we find no merit to defendant's assertion, that because he is imprisoned and will not be capable of making contact with or hurting plaintiff, an FRO is not necessary to protect her.

We conclude Judge Troxell's detailed findings supporting his decision that the second prong of Silver was met were based on substantial, credible evidence in the record and he did not abuse his discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0448-24