# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2486-21

M.L.,

    Plaintiff-Respondent,

v.

D.J.W., Sr.,

    Defendant-Appellant.

_____

Submitted March 4, 2024 – Decided March 21, 2024

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-0886-22.

D.J.W., Sr., appellant pro se.

M.L., respondent pro se.

PER CURIAM

Defendant D.W., Sr.[1] appeals from a March 2, 2022 final restraining order ("FRO") entered pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, in favor of his ex-girlfriend, plaintiff M.L. We affirm.

I.

The FRO judge conducted a two-day hearing and took testimony from both parties, plaintiff's sister, and the two responding officers. The judge found defendant committed the predicate acts of simple assault, N.J.S.A. 2C:12-1, and terroristic threats, N.J.S.A. 2C:12-3. He then concluded the FRO was necessary to protect plaintiff from further acts of domestic violence.

Plaintiff testified she dated defendant for approximately fourteen months. She explained that on November 22, 2021, she and defendant were in her car together when he became "enraged," drove dangerously, threatened to wreck the vehicle to kill them both, hit her over one dozen times with a wrench that was stored in the glove box, fractured her nose by striking her with the wrench, and grabbed her throat. Plaintiff explained she told police about defendant's use of the wrench and was not sure why the officers did not include that detail in the temporary restraining order ("TRO"). She agreed she failed to mention

---

[1] We use initials to protect the confidentiality of the victim. R. 1:38-3(d)(10).

A-2486-21

defendant grabbed her by the throat due to being in shock at the time she made the report to police. Nevertheless, plaintiff's testimony was consistent with the TRO regarding defendant threatening to cut her to pieces; possessing a gun in the trunk; and accelerating the car while she was still exiting. Plaintiff also testified defendant demanded to see her cell phone due to jealousy and stole her purse because it contained her cell phone.

Plaintiff further testified that after defendant left the scene, she called 9-1-1, filed for a restraining order, and allowed the responding officers to take photographs of her injuries. She provided the court with additional photographs of her injuries that she took over the course of several days after the incident. Regarding the evidence adduced at trial, the court excluded certain photographs and text messages that were not referenced in the original TRO. During cross-examination, plaintiff disagreed with defendant's allegations that she was jealous of defendant dating other women and that she hit him.

S.L., plaintiff's sister, testified defendant made a poor impression on her when she met him. For example, he was drunk, made inappropriate jokes in front of her parents, and became hostile when people disagreed with his political views. S.L. explained defendant previously accused plaintiff of cheating on him and admitted he logged into her social media accounts. She believed defendant

A-2486-21

was unhappy when plaintiff ended their romantic relationship and threatened to destroy her personal property. On the night the TRO was entered, plaintiff told S.L. that defendant drove erratically, threatened to kill her, hit her with a wrench, and had a gun in the trunk. S.L. testified she observed plaintiff's injuries and further noted plaintiff was traumatized mentally and was fearful of defendant afterward. She showed the court screenshots of a text message exchange with plaintiff made shortly after the incident, in which plaintiff described the night of the TRO.

Officer Kristopher Burke of the Barnegat Township Police Department testified he responded to plaintiff's 9-1-1 call. He testified plaintiff reported defendant drove erratically, threatened to kill them both, brandished a wrench, threatened to "chop her up into pieces," and claimed he possessed a gun in the trunk that he would use on her. He observed injuries sustained by plaintiff when defendant accelerated his vehicle as she tried to exit.

According to Officer Burke, plaintiff did not report being hit with the wrench. While Officer Burke did not notice any injuries to her face or neck, he conceded during cross-examination plaintiff was wearing a scarf and turtleneck, which made it hard to see. He further conceded plaintiff may have mentioned defendant's use of the wrench to one of the other responding officers.

4

Officer Burke confirmed plaintiff emailed him several weeks later to mention defendant threatened her with a box cutter and hit her with a wrench. Plaintiff did not mention defendant choked her. Although no gun was found in defendant's vehicle, defendant cooperated with police in surrendering his weapons.

Later, Officer Burke prepared a supplemental report regarding the theft of plaintiff's purse. Although defendant claimed he did not have plaintiff's purse and threw it from the car while driving down a specific street, another patrolman looked for the purse in the stated location to no avail. Officer Burke also noted it was strange that defendant later produced the purse. He further concluded defendant attempted to access plaintiff's accounts on her phone.

Officer Daniel Dugan, a patrolman in Barnegat Township, testified he also responded to plaintiff's 9-1-1 call. He stated plaintiff did not mention the wrench, the box cutter, or being choked.

Defendant testified he was an electrician and owned three businesses. He explained plaintiff worked for him and started living with him soon after they began dating. He also mentioned they spent two vacations together. He implied the decision to end their relationship was mutual and he started dating approximately ten women soon afterwards.

5

Defendant stated on the night the TRO was entered against him, plaintiff repeatedly struck him five or six times over the course of thirty seconds because she was worried he infected her with a sexually transmitted disease. As a result, he decided to take her home instead of going to the movies as planned. Once they returned to her home, he alleged plaintiff punched him several times before exiting the car. He denied stealing her purse, threatening her with a wrench or box cutter, or hitting or choking her. He stated she left her purse in the car, and she acted like she was going to "smash" his car after exiting it. He threw her purse from the vehicle in response. He also claimed the photographs of her injuries were "fabricated."

On cross-examination, defendant stated he did not pursue a claim against plaintiff for striking him because he "didn't want to throw gasoline on the fire." Contradicting his testimony on direct examination, he claimed he kept the purse and threw it into a wooded area where it stayed until he was released from jail, retrieved it, and turned it into the police. When confronted with the fact the purse was not dirty despite allegedly having been thrown into the woods, defendant stated he cleaned the purse, so it looked the same as it did on the night the TRO was entered against him.

A-2486-21

Defendant admitted he possessed plaintiff's cell phone but claimed it fell from her purse and was in his vehicle. Although he claimed he turned her phone on, he denied logging into her Facebook, Facebook Messenger, or Gmail accounts. However, he could not explain the discrepancy between his prior statement that he turned on plaintiff's phone and his later claim that only his child turned on the phone.

Defendant denied a text message he sent on the day of the incident professing his continued love for plaintiff was intended to be romantic. Rather, he contended any text messages he wrote about the two "try[ing] again" were meant to reference a platonic friendship. Defendant maintained plaintiff was angry at him for dating other women. Upon further questioning, defendant admitted he threatened suicide to plaintiff during their relationship.

On March 2, 2022, the court entered an FRO against defendant and placed its reasoning on the record that same day. It concluded defendant lacked credibility in his claim that plaintiff was simply a "scorned" woman who was angry he was dating someone else. Plaintiff produced text messages demonstrating defendant wanted to pursue a romantic relationship with her. Defendant also provided incredible testimony that he never threatened suicide, which was disproven by text messages. Further, the court found defendant's

7

testimony regarding his taking of plaintiff's purse lacked credibility because he made conflicting statements. The court concluded defendant took plaintiff's purse to access her cell phone.

The court also expressed concern about plaintiff's credibility with regard to being struck repeatedly with a wrench, but held even without being struck with a wrench, there was enough evidence to support the issuance of a restraining order. Further, the court believed defendant accelerated the vehicle while plaintiff was exiting to take her purse and cell phone. Overall, the court determined plaintiff was more credible throughout the trial.

## II.

Our review of a court's decision after a bench trial in the Family Part is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

"We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). Deference is particularly appropriate "when the evidence is largely testimonial and involves questions of credibility." In re J.W.D., 149 N.J. 108, 117 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).

We do not disturb a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M., 453 N.J. Super.

at 12 (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "'[o]ur law is particularly solicitous of victims of domestic violence,'" J.D., 207 N.J. at 473 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts liberally construe the PDVA "to achieve its salutary purposes." Cesare, 154 N.J. at 400.

Domestic violence occurs when an adult or emancipated minor commits a predicate act upon a person protected by the PDVA. N.J.S.A. 2C:25-19(a). A judge must engage in a two-step analysis when determining whether to grant an FRO under the PDVA. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). First, the judge must be satisfied, by a preponderance of the credible evidence, the plaintiff has proven the occurrence of one or more of the predicate acts enumerated in N.J.S.A. 2C:25-19(a). Ibid. See also N.J.S.A. 2C:25-29(a) (providing an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"); R. 5:7A(d) (mirroring the language of N.J.S.A. 2C:25-29(a)).

Only if the plaintiff first proves one of the predicate acts does the judge then consider whether an FRO is warranted to protect the plaintiff. Silver, 387 N.J. Super. at 126; see also J.D., 207 N.J. at 476 (quoting N.J.S.A. 2C:25-29(b) and explaining the judge must find "relief is necessary to prevent further

abuse"). While this second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 475-76 (quoting Silver, 387 N.J. Super. at 127).

## III.

On appeal, defendant argues the trial court's factual findings and conclusions of law were not supported by credible evidence. Even if they were, he claims the FRO was unnecessary to protect plaintiff.

## A.

Defendant disagrees with the court's conclusions that he: wanted to rekindle his romantic relationship with plaintiff; previously threatened suicide; intentionally took plaintiff's purse; and wanted to look at the contents of her phone. He further disagrees with the court's finding that plaintiff was more credible. Overall, he contends the domestic violence complaint should have been dismissed because he was the more credible witness.

There is ample credible evidence in the record to support the court's conclusions. The trial court noted plaintiff's testimony was more credible regarding defendant's desire to continue their romantic relationship and

threatening self-harm. Defendant provided conflicting and nonsensical statements about his continued romantic interest in plaintiff. For example, he denied a text message he sent on the day of the incident professing his continued love for plaintiff was intended to be romantic and, also, claimed any text messages that he wrote about the two "try[ing] again" were meant to reference a platonic friendship. Further, he admitted he threatened suicide to plaintiff during their relationship. Although the parties have not supplied us with copies of the text messages, the trial testimony of both parties supports the court's credibility determinations.

The court also concluded, and the record on appeal supports, defendant provided conflicting stories about taking plaintiff's purse and accessing her cell phone. Further, the court found plaintiff to be the more credible of the two and, even setting aside her claims about the wrench, the court believed her recounting of the events was credible.

There is support for the court's conclusion that plaintiff's testimony, excluding defendant's alleged use of the wrench, was sufficient to satisfy the legal standards for an FRO. Defendant's other conduct on the night in question, including his erratic driving, his claims that he would kill both himself and

plaintiff, and his decision to accelerate the car as plaintiff tried to exit, were sufficient for the court to grant the FRO.

In sum, the trial court's credibility determinations were not manifestly unsupported or inconsistent with the evidence in such a way that the interests of justice were offended. Rather, the court's finding as to the predicate act of domestic violence was proper based on the testimonial evidence adduced.

B.

Defendant further contends the court erred in granting the FRO because it did not need to protect plaintiff from immediate danger or protect her from further abuse. He alleges plaintiff lives in another country where the FRO will not protect her, and so the FRO unnecessarily deprives him of his freedoms.

The court concluded defendant repeatedly threatened plaintiff to put her in fear of bodily injury and made terroristic threats when he referenced a gun and drove erratically. It found an FRO was necessary to protect plaintiff and she credibly testified she suffered injuries from defendant. The court rejected defendant's claims that plaintiff lived abroad and the two would not cross paths. It ordered defendant to avoid plaintiff when she returned to the United States and to avoid her place of employment in the United States. The record also reflects plaintiff was a permanent U.S. citizen working in the United States.

 A-2486-21

There was substantial credible evidence in the record to support the court's determination that the second prong of <u>Silver</u> was satisfied. The record supports the court's conclusion that plaintiff needed protection from further abuse by defendant, who committed severe acts of violence and threatened to kill plaintiff. The trial court's findings are adequately supported by the substantial, credible evidence in the record, and we discern no basis to disturb them.

To the extent we have not specifically addressed defendant's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2486-21