# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3537-23

D.S.,[1]

    Plaintiff-Respondent,

v.

J.S.,

    Defendant-Appellant.

_____

    Submitted May 21, 2025 – Decided June 18, 2025

    Before Judges Currier and Paganelli.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-2076-24.

    Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

    Respondent has not filed a brief.

_____

[1] We use initials to protect the domestic violence victim's privacy. R. 1:38-3(d)(10).

PER CURIAM

In this appeal, defendant argues the trial court erred in granting plaintiff a final restraining order (FRO) against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because the trial judge made credibility determinations, factual findings that were supported by substantial credible evidence, and correctly applied the facts to the law, we affirm.

We derive the pertinent facts and procedural history from the trial record. Initially, plaintiff was granted a temporary restraining order (TRO) against defendant alleging defendant harassed her.[2] The TRO was amended to include additional facts regarding the predicate acts and the parties' history of domestic violence. Both parties testified at trial.

Plaintiff testified that she and defendant had an argument in their bedroom around 11:00 p.m. She explained she tried to leave the bedroom, but defendant "stood in front of the door and stopped [her] from leaving and pushed [her] when [she] tried to leave." She then retrieved her phone, to record him, and "he took the phone away from" her. Defendant "pushed [plaintiff] by [the] shoulder a few times and . . . held [her] wrist and tried to . . . get [her] away from the door."

_____

[2] Before the start of trial, the trial court, sua sponte, amended the TRO to include the predicate act of criminal mischief because plaintiff alleged defendant broke her phone.

A-3537-23

Plaintiff stated that she then retrieved her car keys to leave. However, defendant "took [her] car keys away from [her] and told [her she] could[ no]t leave." Plaintiff told defendant she was "going to leave anyway" and defendant "said if you leave this . . . room I[ a]m going to break your phone."

Plaintiff testified that before she left, defendant "slammed [her phone] on the foot of [their] bed." She explained that the bed had "posts" and she heard a "smash." Plaintiff stated she "left the room and . . . definitely heard [defendant] smash [the phone] up a few more times." Plaintiff had her daughter call 9-1-1.

Plaintiff testified that when she next saw her phone, "[i]t was out of the case, . . . the screen protector was broken, [and] the phone itself was broken." Plaintiff's phone was admitted into evidence.[3]

Moreover, plaintiff explained that defendant stated, if she called the police, he would "make sure that [her] son d[id no]t live in th[e] house anymore." The next day, plaintiff's "son was playing rap music" in the basement of the home. Plaintiff testified that defendant said her son had to leave and "he was

---

[3] The trial court described the phone as "severely damaged" and noted it was in "two pieces." The court also noted "the screen of the phone, ha[d] become detached," "the phone [wa]s severely cracked, splintered." In addition, "[t]here [we]re a number of stray pieces of telephone . . . in the bag."

going to call the police." Defendant contacted the police and they arrived at the home, but nothing happened.

As to the parties' history, plaintiff testified that defendant would kick and throw her children's clothes in the garage and hide their shoes. Further, she testified that in March 2023, she told defendant she was going to watch her sister's dog. Defendant advised her that if she brought "the dog over he[ wa]s going to throw the dog out into the street." Plaintiff "thought [defendant] was . . . joking." However, when defendant arrived home, and the dog was at the house, plaintiff heard "like . . . a car crash[]" as defendant "had thrown the dog inside of the crate into the garage." Plaintiff also testified that in October 2023, defendant locked her out of the house. When she questioned defendant about it, he stated "[y]ou have not seen the wor[st] of me yet."

Plaintiff testified that she needed an FRO because defendant was drinking alcohol again and when "he drinks he[ i]s a different person." She explained that when defendant drank "he became intoxicated" "mostly on the weekend."

Defendant testified and acknowledged the parties' argument, although he stated the plaintiff "started to scream." He stated plaintiff got her cellphone and car keys and he "did[ no]t bother her." Defendant testified that he could not "remember taking [plaintiff's] phone." When defendant was shown the phone,

he testified that he did not "recognize it" as her phone and had not seen that phone in that condition before. Defendant denied breaking the phone or being intoxicated.

As to the incident involving plaintiff's son, defendant testified that he did request the son to "please turn the music" off. In response, defendant stated the son insulted him and plaintiff "curs[ed at him], yell[ed], threaten[ed him,] saying that if [he] d[id] call the police . . . she w[ould] come and file [a] restraining order." Defendant admitted to calling the police. The police advised defendant "there[ wa]s not much [he] c[ould] do" except go to court. Defendant denied being intoxicated.

As to the incident with the dog, defendant stated it was "not true" that he "picked up a crate with the dog in it and threw [the crate] into the garage." Instead, he explained he did "pick up the . . . crate, . . . but [he] never thr[e]w it."

In terms of locking plaintiff out of the house, defendant stated he "did[ no]t know . . . she was out there, so [he] locked the door." Further, when "[s]he called [him] . . . [he] came . . . and opened the door." Defendant denied "ever mak[ing] any threats to" plaintiff.

The trial court found plaintiff's testimony was not "contrived" because "[t]here[ wa]s too much detail and too much honesty." The court stated the incidents happened "as described by . . . plaintiff." The court also noted plaintiff's testimony offered "detail" and she declined to "fabricate" when "she could have."

The court found defendant "ha[d] credibility issues." For instance, defendant

> denie[d] doing any damage to [plaintiff's] phone. But he . . . testifie[d] that he d[id] not recall if he even took her phone. If he d[id] not recall taking her phone, either he [wa]s not being truthful; and if he[ wa]s not being truthful on that it[ i]s difficult to believe any of his other testimony, or it is possible if he d[id] not . . . recall taking her phone it could be because he was intoxicated. And if he was intoxicated but denied being intoxicated, it is on that account difficult to believe his other testimony.

The trial court found defendant took plaintiff's phone and destroyed it. The court determined defendant committed harassment, by engaging in a "c[ourse] of conduct, intended to annoy or alarm, and [committed] criminal mischief." As to defendant calling the police the next day, the court found that defendant "fulfill[ed]" his threat and that was "an act of harassment on . . . its own, a course of conduct intended to annoy or alarm the plaintiff."

6

As to the parties' history, the trial court determined that plaintiff "went outside and he decided he was going to lock her out." Further, as to the dog incident, the court determined "plaintiff's recollection of that . . . event is . . . what . . . happened. But in any event simply throwing the crate out into the garage was a harassing act." The court found the parties had a history of domestic violence.

As to plaintiff's need for an FRO, the trial court stated "the condition of th[e] telephone is . . . disturbing." The court found that defendant's actions "render[ed the] . . . phone into the mess of plastic and metal that . . . it sp[oke] for itself in terms of a need for" an FRO. The court described the incident as an "incredibly violent act. And it may have been fueled by alcohol." The court entered the FRO against defendant.

On appeal, defendant contends the trial court erred because "[d]efendant's act[] of damaging the phone, even if . . . true, is not a predicate act severe enough to support the entry of an FRO by itself" because "this is just property damage [and p]roperty damage by itself is insufficient to warrant the entry of an FRO." Defendant also contends plaintiff "failed to prove that the [FRO] was necessary for her protection."

7

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, we review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Ibid. "In performing th[is] function, the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence . . . be

8

evaluated in light of the previous history of violence between the parties." Id. at 125-26 (quoting Cesare, 154 N.J. at 402).

As relevant here, the PDVA includes "criminal mischief," N.J.S.A. 2C:25-19(a)(10); and "harassment," N.J.S.A. 2C:25-19(a)(13); as predicate acts.

"A person is guilty of criminal mischief if he [p]urposely or knowingly damages tangible property of another," N.J.S.A. 2C:17-3(a)(1); or "[p]urposely, knowingly or recklessly tampers with tangible property of another so as to endanger person or property . . . ." N.J.S.A. 2C:17-3(a)(2).

In N.T.B. v. D.D.B., we held "in breaking down defendant's bedroom door, plaintiff . . . destroy[ed] the property of another and therefore committed the predicate act of criminal mischief." 442 N.J. Super. 205, 219 (App. Div. 2015). Also, we held "plaintiff[] pouring juice on . . . speakers, tearing them out from the wall, and throwing them in the toilet . . . establish[ed] criminal mischief." Id. at 220.

Under N.J.S.A. 2C:33-4:

> [A] person commits [harassment] . . . if, with purpose to harass another, he:
>
> > a. Makes, or causes to be made, one or more communications . . . in . . . any . . . manner likely to cause annoyance or alarm;
> >
> > . . . .

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

"A finding of a purpose to harass may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997). "Common sense and experience may inform that determination." Ibid.

"The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (explaining that an FRO should not be issued without a finding that relief is "necessary to prevent further abuse" (quoting N.J.S.A. 2C:25-29(b))). "[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super. at 126-27 (quoting Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999)).

Applying these well-established principles, we find no error in the trial court's entry of the FRO against defendant. The court determined that defendant committed predicate acts of harassment—destroying plaintiff's phone and calling the police the next day—and criminal mischief—destroying plaintiff's

10

phone. The court's factual findings are supported by the credible evidence in the record and its analysis of the facts under the statutes is appropriate. Moreover, the court correctly evaluated defendant's acts in light of his prior acts of domestic violence including defendant's handling of the dog and locking plaintiff out of the home.

Finally, the trial court determined an FRO was necessary. The court considered the "disturbing" condition of plaintiff's phone, describing it as a "mess of plastic and metal." The court stated defendant's act was "incredibly violent" and "may have been fueled by alcohol." Therefore, an FRO was necessary to prevent "future acts of domestic violence against this plaintiff." We conclude there is no reason to disturb that determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3537-23