# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2102-24

A.J.R.,[1]

    Plaintiff-Respondent,

v.

T.S.C.,

    Defendant-Appellant.

_____

        Argued October 9, 2025 – Decided November 5, 2025

        Before Judges Marczyk, Bishop-Thompson and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1616-25.

        Shira Katz Scanlon argued the cause for appellant (Martine, Katz Scanlon & Schimmel, PA, attorneys; Shira Katz Scanlon, of counsel and on the briefs).

        Christine M. D'Elia argued the cause for respondent.

---

[1] We use initials to protect the parties' privacy and the confidentiality of the proceedings in accordance with <u>Rule</u> 1:38-3(d)(10).

PER CURIAM

Following a two-day hearing, a Family Part judge entered a final restraining order (FRO) in favor of plaintiff A.J.R. and against defendant T.S.C., plaintiff's former husband, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (the PDVA). The judge concluded defendant committed harassment, N.J.S.A. 2C:33-4, a predicate act of domestic violence, and the issuance of an FRO was necessary for plaintiff's protection.[2]

Defendant appeals, arguing the judge committed reversible error by granting the FRO without a sufficient basis for finding the predicate act of harassment. He also challenges the FRO's provisions that included the parties' minor son, A.C., as a protected party and altered the parties' custodial agreement.

We have considered these arguments in light of the record and applicable legal standards. Because we conclude the judge failed to make adequate findings of fact and conclusions of law, we reverse and remand for a new hearing before a different judge.

---

[2] The judge entered an amended FRO on January 17, 2025, which added provisions for defendant's parenting time, designated plaintiff as parent of primary residence, and included other conditions not relevant to this appeal.

I.

The parties married in 2006 and have three children: A.C., born in 2009; D.C., born in 2011; and C.C., born in 2015. Following acrimonious divorce proceedings, the parties were divorced in 2022.

In 2020, plaintiff obtained a temporary restraining order (TRO) against defendant. She voluntarily dismissed that action, and the parties agreed to civil restraints by way of a July 13, 2020 consent order entered in the pending matrimonial docket. In addition to addressing custody and parenting time, the order provided:

> All communications between the parties shall be via the Our Family Wizard [(OFW)] application and limited to issues pertaining to the parties' unemancipated children. Both parties shall sign up for [OFW] within [twenty-four] hours of the entry of this [o]rder. Any such communications shall not be harassing in nature. In the event of a legitimate bona fide emergency regarding the children's welfare, the parties shall be permitted to communicate with each other via telephone regarding the emergency only.

Although defendant signed up for OFW, he deleted the application sometime in 2022. Plaintiff did not move to enforce this provision; instead, the parties' infrequent communications occurred by email or text message.

On November 18, 2024, plaintiff obtained a second TRO against defendant. The factual basis for the predicate act of harassment stated:

> [The] parties are divorced and share three minor children in common. At approximately the above date and time, [plaintiff] reports [defendant] has become unhinged from his alcoholism. [Defendant] has been talking badly about [plaintiff] to parties' son. The [defendant] sent an e-mail calling [plaintiff] a joke and fraud and telling [plaintiff] "try me." [Defendant]'s email also stated "Glad you're not my problem."
>
> [Plaintiff] reports [defendant] strangled parties' son [A.C.] on this date as well. [Defendant] was calling parties' son's names. [Plaintiff] reports [defendant] and parties' son got into a physical altercation during which [defendant] slammed parties' child into a wall and choked the child out. [Plaintiff] reports the parties' son is autistic. [Plaintiff] is scared of [defendant]. Parties' son rode his bike to the police station. [Plaintiff] reports this is not the first time an incident like this has happened. [Plaintiff] reports [defendant] left a handgun out on a table when children were present in the home.

Plaintiff was not present during the incident between defendant and A.C., which occurred at defendant's residence. The TRO also reported a prior history of domestic violence, stating defendant strangled plaintiff in the past and referencing the prior TRO, which included incidents of physical and verbal abuse in 2017, 2018, and 2019.

Plaintiff subsequently amended the TRO to include the following "additional information" regarding the predicate act:

> The parties['] divorce de[c]ree was entered on February 15, 2023. From February 2023 to the present, defendant has engaged in a pattern of harassment by

refusing to follow court orders; repeatedly using threats of filing continuous lawsuits to control plaintiff. Defendant has also refused to use [OFW] to communicate, as ordered by the court; instead emailing or texting plaintiff. Defendant[']s text and emails to plaintiff are filled with degrading comments, name calling and offensive language. For several months, defendant has refused to communicate directly with the plaintiff about the children, instead using the children to communicate. Defendant continues to refuse to remove his abandoned car from plaintiff[']s property and on October 1, 2024, threatened to have charges pressed if . . . plaintiff had it removed.

In addition to prohibiting defendant from contacting plaintiff and A.C., the TRO awarded plaintiff temporary custody of all three children.

The FRO hearing, during which both parties were represented by counsel, was conducted on December 18, 2024 and January 6, 2025. Because plaintiff did not witness the incident between defendant and A.C., which was still under investigation, the basis for the FRO was limited to the text and email communications.

Plaintiff produced and testified to a series of twelve written electronic communications from August 2022 to October 2024: two in 2022; six in 2023; and four in 2024. Although plaintiff initiated the majority of the communications, she explained she did so because, since defendant deleted OFW in 2022, she did not have the ability to communicate with him through the

5

application. While the majority of the communications centered around the children, they were consistently filled with defendant's sarcasm and vitriol.

Plaintiff also produced photo and video evidence and testified to the prior history of domestic violence consistent with the information reported on the TRO. She explained she sought an FRO because she was afraid of defendant and believed the harassing communications would continue.

At the conclusion of trial, the judge noted he "listened to both parties testify, the way they testified[,] and how they testified." He found plaintiff, a physician, to be a "uniquely credible witness," but did not explain why he made that determination. Conversely, the judge found defendant, an attorney, "not to be a very credible witness . . . based on his inability to answer questions." The judge noted he "asked" and "pleaded" with defendant "to just answer the questions," but instead of answering the questions, defendant tried to "argue the case in his answers. He doesn't like to answer questions. He doesn't like to be put on the spot. He avoids answering the direct questions of this court and of the plaintiff's counsel."

Based on plaintiff's credible testimony, the judge ruled:

> I find that there has been abuse in the past—physical abuse on a number of occasions. Clearly . . . plaintiff was physically abused by the defendant when . . . defendant was at least to some degree under the

6

influence of alcohol. But . . . those things are very much in the past, so we need to determine whether there is a current verdict of physical abuse, which I believe is required in Silver[3] that we do have some determination of what occurred recently. What is the most current act of domestic violence.

And in this regard, the court focuses on the fact that there was a prior restraining order action. And very commonly in our litigation, especially with attorneys, parties enter into what is referred to as civil restraints. They attempt in a civil way to resolve problems.

And in this particular matter, they attempted to resolve problems with using [OFW] as a technique to avoid the type of communication that was necessary with a family of three children. But . . . defendant refused to comply with the court order of [the matrimonial judge]. And I'm satisfied that that was his decision. He couldn't be bothered with the court order that he agreed to. This was a consent order, and he couldn't agree to it. I mean, he agreed to it, but then refused to comply with it because he couldn't be bothered with it.

And I find that that type of action, a failure to comply with a court order affecting the relationship of the parties is a[n] annoying conduct, and that is a violation of [N.J.S.A.] 2C:33-4(c), because it's a continuing conduct, his failure to comply with this court order over and over and over again. That I find to be repeat conduct that is of a consequence of a violation of the prong two of Silver that establishes the need for this restraining order.

---

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

. . . [T]his plaintiff needs the protection of a restraining order to avoid this type of continuing annoying conduct. Now, the court can't make the determination as to the extent of the litigation here and how annoying that was, but I'm looking at prior physical abuse. When you're subject to prior physical abuse, what occurs currently is a concern of maybe not future or present physical abuse, but present, future and present annoying conduct. That . . . defendant here continues to annoy . . . plaintiff.

The judge then considered a photograph of a sports injury to C.C.'s knee, which was the subject of contentious emails between the parties in January 2024.[4] Referring to defendant's skepticism about C.C. being out of sports for three weeks, the judge opined:

Now I don't know if . . . defendant complied with that or not. It's not clear [to] this court whether he did. But it's the type of problem that is indicative of ignoring the type of connection the parties were originally set in a court order that they would have to have contact only through [OFW]. That's the requirement that was agreed to. That was ignored, and that I find to be a violation of [N.J.S.A.] 2C:33-4(c). It is continued annoying conduct. It's not just one isolated violation, but it's a continued violation over many months of . . . defendant's refusal to cooperate.

---

[4] Plaintiff emailed defendant to advise him she had taken C.C. to the doctor, who diagnosed him with a knee sprain and wrote him out of gym and sports for three weeks. Defendant's sarcasm-laden response indirectly indicated he would not "enforce the restrictions."

A-2102-24

So I'm going to grant this [FRO]. I find that it is necessary, and that . . . plaintiff is entitled to protection not to be annoyed.

The judge then addressed the custody arrangement ordered in the divorce:

This is not the type of case in which the parties get along and can have joint shared physical custody. It is simply not going to work. It hasn't worked, and the court needs to change it at this time.

The judge designated plaintiff the parent of primary residence for all three children, with defendant having reasonable parenting time to be determined by the judge assigned to the parties' matrimonial matter. This appeal followed.

II.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv's. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters,

9

appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 413. However, we do not defer to the judge's legal conclusions if they are "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

When considering an application for an FRO, a trial court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. If the court finds a defendant committed at least one predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126.

A person is guilty of the predicate act of harassment, "if, with purpose to harass another," the person "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). This section "proscribes a course of alarming conduct or repeated acts with a purpose to alarm or seriously annoy an intended victim." State v. Hoffman, 149 N.J. 564, 580 (1997). "'A finding of a purpose to harass may be inferred from the evidence presented' and from

10

common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting Hoffman, 149 N.J. at 577).

"A history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D. v. M.D.F., 207 N.J. 458, 483 (2011). Nevertheless, our Supreme Court has cautioned trial judges when considering allegations of harassment under subsection (c):

> Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient. The victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose.
>
> [Id. at 487 (citations omitted).]

Here, the judge found a series of written communications over the span of a twenty-five-month period, which were prohibited by a matrimonial court order, constituted a "course of conduct" in violation of subsection (c). We do not minimize the judge's concerns, particularly given the finding of past acts of domestic violence. However, a judge is required to make specific findings of fact and conclusions of law. See R. 1:7-4(a); see also Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008).

11

Critically, the judge never found that defendant acted with the conscious object to alarm or seriously annoy plaintiff. Perhaps we could conclude this was implicit had the judge not twice commented that defendant's refusal to use OFW was because "he couldn't be bothered with it."

Although our standard of review is generally limited, where inadequate factual findings are made or where issues are not addressed, we are constrained to vacate the FRO and remand for further proceedings. See Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015). For these reasons, we reverse the FRO and amended FRO and reinstate the amended TRO pending further order of the trial court. Because the trial judge made credibility determinations and expressed a commitment to his findings, we remand for a new trial before a different judge. Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023). We take no position on the outcome of the remanded FRO hearing. Because we are constrained to reverse the FRO on procedural grounds, we need not and do not address defendant's arguments regarding the children's custody, primary residence, and parenting time.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

_M.C. Hawley_

Clerk of the Appellate Division

12

A-2102-24