# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1842-24

C.B.,[1]

    Plaintiff-Appellant,

v.

J.P.,

    Defendant-Respondent.

_____

Submitted December 18, 2025 – Decided March 17, 2026

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1232-25.

Donelson, D'Alessandro & Peterson, LLC, attorneys for appellant (Keith A. Peterson, on the briefs).

Matthew Jeon, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect domestic violence victims. R. 1:38-3(c)(12).

Plaintiff C.B. appeals from the denial of her application for a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, following a hearing. Having considered the record and the applicable legal principles, we reverse and remand for a new hearing before a different judge.

I.

We glean the following undisputed facts elicited from C.B.'s testimony at the FRO hearing, which was conducted on January 17, 2025. Both parties were represented by counsel at the hearing. C.B. and J.P. dated for less than two months during the summer of 2024. C.B. alleged and provided detailed testimony J.P. sexually assaulted her on two occasions: July 23 and August 17, 2024. According to C.B., J.P. used coercion and force to engage in nonconsensual sexual acts with her, ignoring her repeated verbal refusals.

Despite the alleged assaults, the parties continued to interact, exchanging messages with affectionate and sexual content, meeting in person, and engaging in consensual sexual intercourse at least once following the first incident. The relationship ultimately ended in late August 2024.

Between August 17 and 26, 2024, after the second alleged assault, C.B. reported the incidents to the Jersey City Police Department and sought to obtain

a temporary restraining order (TRO). She testified a department detective instructed her to delay filing for the TRO until the police made contact with J.P. Following this instruction, C.B. did not pursue the TRO until October 24, 2024, after being informed the police had contacted J.P.

C.B. ultimately filed the complaint and obtained the TRO, alleging J.P. committed the predicate acts of assault, N.J.S.A. 2C:12-1; sexual assault, N.J.S.A. 2C:14-2(c)(1); criminal sexual contact, N.J.S.A. 2C:14-3; and harassment, N.J.S.A. 2C:33-4. She further testified although J.P. had not contacted her since the TRO was granted; she remained fearful and stated the FRO was necessary to protect her from J.P.

J.P. did not testify or present any witnesses. After reciting the relevant statutory definitions and case law pertaining to assault, sexual assault, criminal sexual contact, and harassment, the court summarized C.B.'s testimony regarding the alleged predicate acts. The court also made credibility determinations, finding C.B.'s testimony generally credible and noting no significant inconsistencies or evidence of fabrication. It further acknowledged C.B.'s demeanor, responsiveness to the questions, and body language appeared consistent with "a person that [wa]s generally truthful with the [c]ourt."

A-1842-24

However, the court found certain aspects of C.B.'s testimony regarding the version of events were, "at times, . . . not plausible or logical," and therefore discounted those portions of the testimony. Specifically, in reviewing the text messages between the parties, the court found there were no references to the alleged assaults, no apologies by J.P., and no expressions from C.B. regarding her feelings about the alleged assaults. On that basis, the court further discounted C.B.'s testimony.

Additionally, the court did not credit C.B.'s explanation for the delay in contacting the police—namely, her claim she was advised by a detective not to immediately seek a restraining order—finding this explanation "simply implausible." The court opined, as a matter of law, no police officer would ever offer such advice. It also found C.B.'s testimony unsupported because she did not have the detective testify at the hearing.

The court "disregard[ed] all of [C.B.]'s testimony regarding the predicate acts" and determined C.B. failed to satisfy the first prong of the analysis under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). On January 17, 2025, the court denied the FRO, dismissed the domestic violence complaint, and vacated the TRO. This appeal ensued.

## II.

The scope of appellate review following the grant or denial of an FRO is limited. T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Generally, findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

"We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). We afford "particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at

A-1842-24

412). We, however, review a trial court's legal conclusions de novo. C.C. v. J.A.H., 463 N.J. Super. 419, 429 (App. Div. 2020).

In determining whether to enter an FRO under the PDVA, the court is required to make certain findings regarding each alleged predicate act pursuant to a two-step analysis. Silver, 387 N.J. Super. at 125-27. Initially, "the [court] must determine whether [a] plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). If a predicate act is proven, the court must next determine whether a restraining order is necessary to protect a plaintiff from immediate harm or further acts of abuse. Id. at 127.

The predicate act of assault is committed when a person "[a]ttempts to cause or purposely, knowingly[,] or recklessly causes bodily injury to another[.]" N.J.S.A. 2C:12-1(a)(1). "Bodily injury" is "physical pain, illness or any impairment of physical condition[.]" N.J.S.A. 2C:11-1(a); see also State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008).

Sexual assault is another predicate act under the PDVA. N.J.S.A. 2C:25-19(a)(7). A person commits a sexual assault if, during the act of sexual penetration with another person, "[t]he actor commits the act using coercion or

without the victim's affirmative and freely-given permission, but the victim does not sustain severe personal injury." N.J.S.A. 2C:14-2(c)(1).

N.J.S.A. 2C:14-3(b) provides that "[a]n actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14-2(c) (1) through (5)." "Sexual contact" is defined as "an intentional touching by the . . . actor, either directly or through clothing, of the victim's . . . intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d).

A person is guilty of the predicate act of harassment, "if, with purpose to harass another," the person "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)).

Here, the court did not make factual findings J.P. had committed one of the alleged acts prohibited by the PDVA, nor did it engage in a principled analysis to determine whether C.B. proved each act by a preponderance of the

evidence. See Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 227-28 (App. Div. 2024). The trial court also did not address the second prong of Silver—whether an FRO was necessary to protect C.B.—based on her testimony of ongoing fear and distress.

Instead, the court discounted C.B.'s testimony and determined her credibility regarding her initial pursuit of a TRO based on judicial notice of a purported practice by police officers, rather than on an assessment of the relevant evidence. See N.J. Div. of Child Prot. & Permanency v. A.M.W., 480 N.J. Super. 496, 506 (App. Div. 2024). It likewise discounted C.B.'s testimony due to the lack of allegations or apologies in the text messages between the parties, without correlating this evidence to any specific predicate acts. Therefore, no deference is owed to the court's ruling given the absence of any legal conclusion. See Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019). Absent an expressed holding on specific predicate acts, or other findings from which an implicit determination may be discerned, we conclude reversal and remand is warranted.

In sum, we reverse, reinstate C.B.'s complaint and TRO, and remand for a new hearing before a different judge. See Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (determining that "[i]n an abundance of caution," a

remanded matter should be assigned to "a different judge for the plenary hearing to avoid the appearance of bias or prejudice based on the judge's prior involvement with the matter and his expressions" of doubt as to a party's credibility); R. 1:12-1(d); Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2026) (stating "the appellate court has the authority to direct that a different judge consider the matter on remand in order to preserve the appearance of a fair and unprejudiced hearing"). We take no position with respect to the outcome of the FRO hearing.

Reversed and remanded for a new hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division